UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANUEL GOITOM WELDEMICHAEL,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF GOLDEN STATE ANNEX, et al.,<br><br>Respondents. | No. 1:25-cv-01553-EFB (HC)<br><br><br>ORDER |

Petitioner is a person detained in an immigration detention facility who has brought a petition for writ of habeas corpus under 28 U.S.C. § 2241. Pending before the court is petitioner's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 11; respondent's Opposition, ECF No. 13; petitioner's Supplemental Statement, ECF No. 14; and petitioner's Response, ECF No. 15.[1] For the reasons set forth below, the motion for a preliminary injunction is granted.

**BACKGROUND AND PROCEDURAL HISTORY**

Petitioner initiated this action on November 13, 2025, seeking a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. In his petition, he alleges that he is currently detained pending immigration removal proceedings and has been detained since March 21, 2025. ECF No.

---

[1] The court has determined that oral argument would not materially assist in resolving this motion and is order the matter submitted on the papers.

1

1 ¶¶ 18, 19. During this time, he alleges, he has not received a bond hearing and he has not received a final hearing on his request for political asylum. *Id*. ¶¶ 18, 20, 23. He raises one claim for relief, that his detention violates his rights to due process under the Fifth Amendment of the Constitution. *Id*. ¶¶ 46-49.

On December 3, 2025, respondents filed an Answer, supported by a declaration of Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE) Deportation Officer Refugia Guerra, in which they represented additional facts relative to petitioner's petition. Per respondents, petitioner is a native citizen of Eritrea, who entered the United States on or around January 27, 2022, and was detained by a Customs and Border Protection officer on that date. ECF No. 9 at 2. He was interviewed by a DHS officer on January 28, 2022, at which time petitioner expressed a fear of returning to Eritrea, and, the same day, DHS initiated removal proceedings against him under section 235(b) of the Immigration and Nationality Act. *Id.*; *id*., Decl. of Refugia Guerra ¶¶ 5-6. On approximately February 14, 2022, DHS released petitioner from custody on an Order of Release on Recognizance, pending a credible fear interview with an Asylum Officer. ECF No. 9 at 2.

On March 20, 2025, petitioner was taken back into DHS custody. ECF No. 9 at 2. On approximately April 10, 2025, an Asylum Officer conducted a credible fear interview and found that petitioner had a credible fear of persecution if he were to return to Eritrea. *Id*. Nevertheless, DHS then initiated detained removal proceedings against petitioner, charging him with removability on two grounds: as an alien present without admission or parole; and as an alien not in possession of suitable travel documents. *Id*. (citing 8 C.F.R. §§ 212(a)(6)(A)(i) & (a)(7)(i)(I)).

Per respondent, petitioner appeared before an Immigration Judge on April 22, 2025, for a master calendar hearing, and requested and was granted a continuance. ECF No. 9, Decl. of Refugia Guerra ¶ 10. On May 22, 2025, he again appeared before an Immigration Judge for a master calendar hearing and again requested and was granted a continuance. *Id*. ¶ 11. On May 28, 2025, an Immigration Judge denied petitioner's request for bond, finding that petitioner was subject to mandatory detention. *Id*. ¶ 12, Ex. 1. On October 22, 2025, an Immigration Judge denied petitioner's second request for bond, again finding him subject to mandatory detention.

*Id*. ¶ 13, Ex. 2. On October 30, 2025, petitioner appeared before an Immigration Judge for a hearing on his applications for relief from removal, but technical problems during the hearing caused the Immigration Judge to continue the hearing until January 28, 2026. *Id*. ¶ 14. In his Motion for Temporary Restraining Order, petitioner confirms most of these factual representations, *see* ECF No. 11 at 1 & Ex. A, except to aver that he has not received an individualized custody determination by a neutral decisionmaker since his re-detention on March 20, 2025. ECF No. 11 at 1-2.

As noted, petitioner initiated the instant action on November 13, 2025. ECF No. 1. On December 3, 2025, on the consent of the parties, the action was assigned to the undersigned for all proceedings. ECF No. 8. On the same day, respondents filed an Answer to the petition, ECF No. 9, and, on December 12, 2025, petitioner filed a Traverse. ECF No. 10. On January 5, 2026, petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 11. On January 8, 2026, the undersigned ordered respondents to file an opposition brief in which they

> shall substantively address whether any provision of law or fact in this case would distinguish it from this court's decision in Morales-Flores v. Lyons, et al., No. 1:25-cv-01640-TLN-EFB (HC), 2025 U.S. Dist. LEXIS 256842, 2025 WL 3514495 (E.D. Cal. Dec. 8, 2025), and other similar cases previously decided by this court, or otherwise indicate that the matter is not substantively distinguishable. Respondents should also state whether they oppose this Court converting the Motion for Temporary Restraining Order to a Motion for Preliminary Injunction.

ECF No. 12. On the same day, respondents filed an Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction, in which they opposed both motions on the grounds set forth in their Answer, and requested that further briefing on the merits of the petition not occur earlier than 180 days from the date of the court's order, to enable the Court of Appeals to decide in pending appeals legal questions that have bearing on the instant case. ECF No. 13. On January 8, 2026, petitioner filed a supplemental statement in support of his Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 14, and, on January 11, 2026, petitioner filed a Response to respondents' Opposition, in which he stated his non-opposition to respondents' request for 180 days to brief the merits of the petition, upon the court's determination of the motion for temporary restraining order and preliminary injunction. ECF No.

1  15.

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, the plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, the Government is the opposing party to a request for temporary restraining order, the third and fourth factors "merge" in the court's analysis. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The first factor, "[l]ikelihood of success on the merits[,] is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

## DISCUSSION

In his petition, petitioner raises a single claim for relief: that his ongoing detention violates his due process rights under the Fifth Amendment. ECF No. 1 ¶¶ 46-49. For the reasons explained below, the court grants petitioner's motion for a preliminary injunction.

**A. Likelihood of Success on the Merits**

Petitioner has demonstrated a likelihood of success on his claim for relief, militating towards the issuance of his requested temporary restraining order. In opposition to petitioner's motion, respondents argue that noncitizens, like petitioner, who have entered the United States and are subject to removal, have no constitutional right to any due process beyond mandatory detention and that such detention is authorized by statute. ECF No. 9 at 3-19. Petitioner,

however, has shown that he is likely to succeed on his claim that the detention to which he is currently subject violates his rights under the due process clause of the Fifth Amendment.

To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the three-part test articulated in *Mathews v. Eldridge*. *See* 424 U.S. 319, 335 (1976). Under *Mathews*, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.; see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, . . . the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

### 1. First *Mathews* Factor

Here, the first *Mathews* factor favors petitioner. Petitioner has shown that he possesses a significant liberty interest to which his due process rights attach. *See* ECF No. 1 ¶ 33; ECF No. 11 at 8. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id*. (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

////

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481-84.

Petitioner's release was similar. Petitioner was released by DHS in February 2022 on his own recognizance, ECF No. 9, Decl. of Refugia Guerra ¶ 7, reflecting the DHS's determination that he did not pose a flight risk or danger to the community. *See Saravia v. Sessions*, 280 F. Supp. 3d 1176 1176 (N.D. Cal. 2017); 8 C.F.R. § 1236.1(c)(8). Petitioner has presented evidence that, since then, he has created and maintained ties to his local community, including to local relatives, community organizations, and his church. ECF No. 10 at 4-8. Respondents do not refute this. *See* ECF Nos. 9, 13. Petitioner has further averred that he presently remains neither a flight risk nor danger to the community, ECF No. 1 ¶ 23, ECF No. 11 ¶ 40, which respondents also do not dispute. *See* ECF Nos. 9, 13. In all material respects, therefore, petitioner's liberty interest resembles that of the plaintiff in *Morrissey*. *See Morrissey*, 408 U.S. at 482; *but see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (observing that, "[g]iven the civil context [of the immigration proceeding], [the noncitizen detainee's] liberty interest is arguably greater than the interest of parolees in *Morrissey*").

Respondents' contention that immigration detainees possess a lesser due process interest than citizens, such that they have no cognizable due process interest in not being indefinitely detained, *see* ECF No. 9 at 18, is contrary to both Court of Appeals and Supreme Court precedent. In *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), the Court of Appeals held that noncitizen aliens have a Fifth Amendment due process interest in freedom from prolonged

6

detention, including in an individualized bond hearing before an immigration judge. This accords with the Supreme Court's recognition that in *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001), that "the Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent," and that these due process rights extend to deportation proceedings. *Demore v. Kim*, 538 U.S. 510, 523 (2003) (holding noncitizen is entitled to due process in deportation proceedings); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (holding that a noncitizen detained under 8 U.S.C. § 1226(a) possessed a liberty interest in freedom from detention cognizable under the Due Process Clause); *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *abrogated on other grounds as recognized in Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200-01 (9th Cir. 2022) (holding that "[r]egardless of the stage of the proceedings," that a noncitizen finds themselves in the immigration process, "the same important interest is at stake—freedom from prolonged detention").

Accordingly, the Court finds that, pursuant to *Morrissey* and its progeny, petitioner does have a liberty interest in his release, implicating his rights under the Fifth Amendment's Due Process clause. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 970 (reaching the same conclusion for a paroled noncitizen); *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5 (E.D. Cal. Dec. 11, 2025) (same); *Reyes v. Larose, et al.*, No. 25-CV-2938 JLS (VET), 2025 WL 3171743, at *5 (S.D. Cal. Nov. 13, 2025) (same); *Rodriguez Rodriguez v. Kaiser*, No. 1:25-cv-01111-KES-SAB, 2025 WL 2855193, at *5-6 (E.D. Cal. Sept. 4, 2025) (same); *Arzate v. Andrews*, No. 1:25-cv-00942-KES-SKO, 2025 WL 2230521, at *4 (E.D. Cal. Aug. 4, 2025) (same); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

/////

7

**2. Second *Mathews* Factor**

Petitioner has also demonstrated his likelihood of succeeding in demonstrating that the second *Mathews* factor militates in his favor, such that he is likely to succeed on his claim for relief. Without an individualized bond hearing, "the risk of erroneous deprivation," *see Mathews*, 424 U.S. at 335, through petitioner's summary detention is considerable. Detention under the INA is only justified when an alien poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. As such, due process requires that petitioner be given an individualized bond determination by a neutral factfinder to determine whether his continued detention is justified. *See Demore*, 538 U.S. 510.

Here, there appears a factual dispute as to whether petitioner has received a bond hearing since his re-detention in March 2025. In his petition and motion, he avers that he "has not been provided a bond hearing before a neutral decisionmaker to determine whether [his] prolonged detention is justified based on danger or flight risk," ECF No. 1 ¶ 20; *see also* ECF No. 11 ¶ 32. He represents that, since March 2025, he has had "his individual hearing continued three times, despite every effort made by [petitioner] to move forward." ECF No. 11 ¶ 36. Respondents, however, have presented evidence that petitioner had bond hearings before Immigration Judges on May 28, 2025, and October 22, 2025, at which he was found to be subject to mandatory detention. ECF No. 9, Decl. of Refugio Guerra ¶¶ 12, 13, 16 & Exs. 1-2.

However, respondents do not represent that petitioner was found to be a danger to the community or a flight risk at these bond hearings. Nor do they dispute petitioner's averments that he is neither. *See* ECF No. 1 ¶ 23, ECF No. 11 ¶ 40; *see generally* ECF Nos. 9, 13. Respondents also do not represent that these hearings were determinations individualized to petitioner and the evidence he tendered, conducted by a neutral factfinder empowered to grant release. *See id*. Rather, respondents appear to take the position that any such factfinding is unnecessary and petitioner's detention is mandatory simply by virtue of his being a noncitizen subject to removal. They contend that his bond was denied pursuant to mandatory BIA authority to that effect. ECF No. 9 at 3-18; *see id*. at 7 & n.6. Respondents have not shown, however, that the statutory section providing for mandatory detention—8 U.S.C. § 1225—properly applies to petitioner. For the

reasons set forth in *Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *2-4; *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01187-SKO (HC), 2025 WL 2959274, at *3-7 (E.D. Cal. Oct. 17, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258-61 (W.D. Wash. 2025); and *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4-9 (E.D. Cal. Sept. 23, 2025), the court finds that 8 U.S.C. § 1225 cannot be properly interpreted to apply to persons, like petitioner, who have entered the United States and have been previously released from custody pending a final removal determination. Thus, on this basis, respondents' grounds for opposing petitioner's motion fail.

Petitioner has also shown a likelihood of success on his claim insofar as he asserts that due process requires he be given an individual bond determination before a neutral factfinder, rather than, as respondents suggest, a non-individualized, blanket denial of bond simply by virtue of petitioner being a noncitizen subject to removal. Under the applicable statutory authority, petitioner's detention is only justified if he poses a flight risk or a danger to the community. *See Zadvydas*, 533 U.S. at 690. As noted, there is nothing in the record indicating that either circumstance is present here, as respondents do not dispute petitioner's averment that he is neither a flight risk nor a community danger. *See* ECF No. 1 ¶ 23, ECF No. 11 ¶ 40; *see generally* ECF Nos. 9, 13. *See* ECF No. 7 at 1-2; *see generally* ECF No. 1 ¶ 88. Thus, without a bond hearing in which a neutral decisionmaker makes an individualized determination of whether petitioner is a danger to the community or flight risk, the risk of erroneous deprivation of petitioner's protected liberty interests is great. *See Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Correspondingly, the probative value of the additional procedural safeguards petitioner seeks—a determination of petitioner's bond-worthiness based on individualized facts, by a neutral factfinder—is high. *See Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4.

/////

### 3. Third *Mathews* Factor

Respondents' interest in petitioner's detention is low. *See Ortega*, 415 F. Supp. 3d at 970. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. The effort and cost required to provide petitioner with procedural safeguards are minimal. *See Lopez*, 2025 WL 3124116, at *4; *Khan v. Noem, et al.*, No. 1:25-CV-01411-EPG-HC, 2025 WL 3089352, at *7 (E.D. Cal. Nov. 5, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citations omitted)).

For these reasons, the undersigned finds respondents' interest in detaining petitioner without an individualized bond determination, at a hearing before a neutral factfinder, is low and does not outweigh petitioner's substantial liberty interest or the risk of the erroneous deprivation of same. Due process thus requires that petitioner receive a hearing before a neutral decisionmaker that complies with 8 U.S.C. § 1226(a) and related laws and regulations if he is re-detained. As such, the Court finds that petitioner has established a likelihood of success on the merits of his claim.

### B. Irreparable Harm

Petitioner will suffer irreparable harm in the absence of a temporary restraining order, which respondents do not dispute. *See* ECF No. 11 ¶¶ 31-37; *see also* ECF No. 13 at 1. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, "[t]he Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *see also Rodriguez*, 779 F. Supp. 3d at 1262. Finally, petitioner has additionally shown that he has ongoing medical needs from recent emergency surgery that are not being adequately attended in detention, thereby endangering his physical well-being, *see* ECF No. 11 ¶ 36; ECF No. 14, which respondents also does not dispute. *See* ECF No. 13 at 1. The

deprivation of adequate medical care to a person in detention is itself "sufficient to establish irreparable harm" for the purposes of injunctive relief. *See Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021). For these reasons, therefore, petitioner has established irreparable harm.

### C. Balance of the Harms and Public Interest

The final two *Winter* factors merge when the government is the nonmoving party, *Baird*, 81 F.4th at 1040, and respondents do not dispute that these factors weigh in favor of the issuance of a temporary restraining order. *See* ECF No. 13 at 1. Broadly, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Moreover, specific to the harms and public interest implicated by unlawful immigration detention, the analysis of the *Pinchi* court is persuasive here:

> "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (quoting *Padilla v. Immigration & Customs Enforcement*, 953 F.3d 1134, 1147–48 (9th Cir. 2020)) ("It is always in the public interest to prevent the violation of a party's constitutional rights."); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district have concluded under similar circumstances, the potential harm to Ms. Garro Pinchi is significant—she faces immediate and potentially prolonged ICE detention, putting her family's financial survival and her already precarious health at risk— while the potential harm to the government is minimal. The only potential injury the government faces is a short delay in detaining Ms. Garro Pinchi if it ultimately demonstrates to a neutral decisionmaker by clear and convincing evidence that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F*, 2021 WL 783561; *Diaz*, 2025 WL 1676854. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with ... a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

*Pinchi*, 792 F.Supp.3d at 1037-38. Here, respondents do not dispute that these factors favor the issuance of a temporary restraining order. *See generally* ECF No. 13. Thus, the court concludes that the equities and public interest weigh in favor of petitioner.

### D. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the court finds that no security is required here.

### E. Request to Proceed Via Pseudonym

Petitioner asks the court to use his initials, rather than his full last name, in any opinion in this case, citing *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050 n.1 (N.D. Cal. 2021) and the suggestion of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. ECF No. 1 at 2 n.1. The court has permitted pseudonym use in similar circumstances, where, as here, petitioner had already received a determination of credible fear of persecution. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1088, 1095-1096 (E.D. Cal. 2025) (noting that the petitioner was "still at risk of removal should his asylum application be denied" and so was "also acutely vulnerable to retaliation"). Accordingly, the court grants petitioner's request to proceed using his initials.

### CONCLUSION AND ORDER

Accordingly, petitioner's motion for temporary restraining order and preliminary injunction, ECF No. 11, is GRANTED. Respondents are ORDERED to immediately release petitioner from custody.

////

    Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner without a pre-deprivation bond hearing before a neutral adjudicator, who possesses authority to order release, at which the Government must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community such that his physical custody is required.

    The Clerk is directed to identify plaintiff by his initials (A.G.W.) on the docket for this case.

DATED: January 12, 2026

                             EDMUND F. BRENNAN
                             UNITED STATES MAGISTRATE JUDGE